**United States District Court**
**District of Massachusetts**

| | | |
|---|---|---|
| **Catherine D. Wilson,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Bell Partners Inc., et al,**<br><br>**Defendant.** | ) | **Civil Action No.**<br>**25-11789-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

Catherine Wilson ("Wilson or "plaintiff") brings this action on behalf of herself, and all others similarly situated, against Bell Partners, Inc. and Bel Stoughton, LLC. Plaintiff is a former lessee at Bell Stoughton, a residential community managed by Bell Partners, Inc. and owned by Bel Stoughton LLC (collectively, "Bell Partners" or "defendants").

Plaintiff alleges that she and other tenants received inflated water bills from defendants due to their unlawful inclusion of a charge for water supplied to the property's fire hydrants and fire sprinkler system. She contends that the inclusion of that charge is prohibited by the Massachusetts sub-metering statute, G. L. c. 186, §22(g), and, by extension, that such a practice constitutes a transfer of responsibility for payment of utility services in violation of G. L. c. 186, §14.

For the reasons set forth herein, defendants' motion for summary judgment will be allowed and plaintiff's motion for class certification will be denied as moot.

## I. Background

### A. Facts

Plaintiff, her daughter, and her daughter's boyfriend leased an apartment at Bell Stoughton ("the Residence") from November, 2022 to January, 2024. Pursuant to plaintiff's lease, she and her co-tenants received invoices from defendants for sub-metered water and sewer charges. Relevant to this case, the town of Stoughton ("the Town") charged the Residence for water provided to the property's hydrant and sprinkler system ("HYD/SPR Fee" or "Fee"). Conservice, LLC, ("Conservice") a third-party billing vendor hired by the Residence, included the HYD-SPR Fee in its Water-Rate calculation used to charge tenants for their water usage. The HYD/SPR Fee is included in the Water/Sewage Addendum in plaintiff's lease.

Wilson claims that the addition of the HYD/SPR Fee in the Water-Rate calculation violates G. L. c. 186, §22(g) and inflates the rate that was used to calculate her total water bill each month. Accordingly, in October, 2023, Plaintiff and her co-tenants stopped paying charges for rent, water and sewer. Bell Partners initiated eviction proceedings for nonpayment of

rent, and Plaintiff and her daughter voluntarily agreed to vacate. Plaintiff still owes the Residence over $10,000 in unpaid rent and utilities.

**B. Procedural History**

Defendants filed the pending motion for summary judgment in July, 2026 and plaintiff timely opposed that motion.

Pending with the Court is also plaintiff's motion for class certification, in which plaintiff seeks to certify a class under Federal Rule of Civil Procedure 23(b)(3) of "[a]ll persons named as residents in, and who signed, lease contracts" at defendants' facilities in four separate communities. The purported class consists of those residents:

> who were charged for water usage of at least the following amounts in any Conservice water bill corresponding to any of the following Conservice post months,

with specific gallon volumes and "post months" identified. Defendants timely opposed the motion for class certification and urge the Court first to resolve the summary judgment motion. A hearing was held by this Court on September 11, 2026, at which time the Court heard oral argument.

## II. <u>Summary Judgment Motion</u>

**A. Legal Standard**

Summary judgment is warranted when there is no genuine issue of any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

When the moving party does not bear the burden of proof at trial, the movant can satisfy its burden by showing that the non-moving party has failed to present evidence necessary to prove the claims at trial. The burden then shifts to the non-moving party to show there are triable material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The Court will view the facts most favorable to the non-moving party and construe reasonable inferences in the non-moving party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

Both parties suggest that this case can be resolved by statutory interpretation of applicable Massachusetts statutes. When interpreting a statute, courts should begin the analysis with the plain language of the statute but may also look beyond the words because "the meaning of statutory language, plain or not, depends on context" and requires a "commonsense reading." Holloway v. United States, 526 U.S. 1, 7 (1999).

**B. Application**

**1. G. L. c. 186, §22**

Plaintiff contends there are genuine disputes as to several material facts but, significantly, the parties do not dispute the facts that are at the core of plaintiff's claims, namely that 1) Conservice included the HYD/SPR Fee in the calculation of each tenant's water rate and 2) the inclusion of that Fee inflated the tenants' water bill charges by minimal amounts.

Defendants' motion for summary judgment depends largely upon the interpretation G. L. c. 186, §22(g) ("§22(g)"). While the Court acknowledges that the interpretation of §22(g) is not pellucid, it is persuaded by defendants' argument that the HYD/SPR Fee is logically included in the water rate calculation because hydrant/sprinkler water is a part of the total water consumed by the building.

Section 22(g) provides that, in determining the rate by which tenants or lessees are to be charged for their water usage,

> landlord shall determine a calculated cost per unit of water consumption by dividing the total amount of any bill or invoice provided to the landlord from the water company for water usage, the customer service charge and taxes, but not including any interest for the late payment, penalty fees or other discretionary assessments or charges, for all water provided to the premises through the water company meter in that billing period, by the total amount of water consumption for the entire premises.

A "customer service charge," which can be included in the water rate calculation, is "a fixed amount charged by a city or town or water company for providing water to a building." The statute goes on to require that the total amount of any water bill as well as the customer service charge and taxes must be for water that is provided through the water company meter.

Defendants assert that the HYD/SPR Fee is a "customer service charge" because it is a flat rate fee charged by the Town to provide water for hydrants, sprinklers and fire lines to

the property. Because the Residence pays the Fee, water is always available in the hydrants, sprinklers and fire lines. The HYD/SPR Fee does not, however, derive from the water company meter. Plaintiff avers that it cannot therefore be included in the water rate calculation given the plain language of §22(g).

Defendants respond that although the HYD/SPR fee does not pass through the water company meter, the water rate calculation is intended to account for the *total* amount of any water bill provided to the landlord from the Town, excluding only interest for late payment and penalties. In the water rate calculation fraction, the numerator is the *total* amount of any water bill or invoice less any penalties, and the denominator is the *total* amount of water consumption for the entire premises. Water provided to the hydrants and sprinklers is part of the latter. The Residence pays the HYD/SPR fee to ensure there is always water for the hydrants and sprinklers that can be deployed when necessary, a lifesaving benefit to each tenant. Tenants would effectively be "using" that water in an emergency. Furthermore, the HYD/SPR Fee appears on the same municipal bill provided by the Town as the water consumption charges, and, it is mandatory, meaning if the Residence fails to pay the Fee, the Town would disconnect water from the entire building.

If the Court were to adopt plaintiff's interpretation of §22(g), landlords would be required to exclude from the water

rate a fee that is 1) mandatory for the providing of water to the entire building and 2) defrays the cost of fire suppression water available to all tenants on the premises. Such an exclusion would be incompatible with the purpose of §22(g).

It is also relevant to point out that §22(g), the sub-metering statute, was enacted to ensure that tenants are not overbilled for water and only pay for water that they use. It is intended to prevent landlords from overcharging their tenants for water. While Wilson alleges that the inclusion of the HYD/SPR Fee resulted in an overpayment of $11 during the course of her tenancy, she seeks damages in the amount of approximately $9,000. Section 22(g) was not enacted to provide such a windfall award.

The Court is persuaded that because §22(g) is intended to account for the total amount of water usage on the premises, and the inclusion of the HYD/SPR Fee adjusts the water rate by only a de minimus amount, it should be included in the water rate calculation.

**2. G. L. c. 186, §14**

Even if it were determined that the HYD/SPR Fee should not be included in the water rate calculation pursuant to §22(g) as plaintiff contends, the question remains whether she and the putative class have a cause of action under G. L. c. 186, §14 ("§14"). Under its own provisions, §22(g) does not afford a

private cause of action so plaintiff alleges that, by unlawfully including the HYD/SPR Fee in the water rate calculation, defendants have violated §14. That statute prohibits landlords from "transfer[ing] the responsibility for payment for any utility services to the occupant without his knowledge or consent." Landlords who violate §14 are liable for the greater of the tenant's actual or consequential damages or three months' rent.

Plaintiff's §14 claim is lacking because all tenants, including Wilson, consented to payment of the HYD/SPR Fees when they signed the Water/Sewage Addenda in their leases but the Court disagrees with defendants' other argument for disclaiming liability, namely that fire suppression safety infrastructure is not a utility that impacts habitability.

Plaintiff contends, and the Court agrees, that §14 applies to the fire-suppression infrastructure which is the object of the HYD/SPR Fee. That section is applicable to any lessor or landlord

> who is required by law or by the express or implied terms of any contract or lease or tenancy at will to furnish water, hot water, heat, light, power, gas, elevator service, telephone service, janitor service or refrigeration service.

Those enumerated utilities impact the habitability or living conditions of the premises. The statute prohibits a landlord from: 1) failing to furnish the described utilities, 2)

interfering with the furnishing of such utilities and 3) transferring responsibility for payment of "any utility service." At particular issue here is the meaning of "any utility service" and whether that phrase is intended to expand the utilities enumerated earlier in the statute. Under the cannon of construction ejusdem generis, "any utility service" includes only the kinds of utilities described earlier that impact habitability or basic living conditions. Commonwealth v. Escobar, 479 Mass. 225, 229 (2018).

Defendants assert that the fire suppression safety infrastructure is not a utility that impacts habitability or living conditions and therefore is not covered by §14. Yet defendants simultaneously aver that the hydrant/sprinkler water is part of the total water consumed by the building and emphasize that if the Residence does not pay the HYD/SPR Fee, the Town will disconnect water for the entire building. That would certainly impact the habitability and living conditions of the premises and, without protection from fires, habitability is non-existent.

It is incongruent for defendants to assert that, on the one hand, the HYD/SPR Fee should be included in the water rate because the hydrant/sprinkler water is part of the total water consumed by the building and used by tenants under §22(g), and on the other, that the hydrant/sprinkler water is not considered

a utility that impacts habitability under §14. The Court concludes that the hydrant/sprinkler water provided through the fire-suppression infrastructure is covered by §14.

Nevertheless, plaintiff's claim is not actionable because she consented to the payment of the HYD/SPR Fee when she signed the Water/Sewage Addendum to her lease. The addendum explicitly states

> Tenant shall pay to Landlord, as additional rent, charges for water usage and sewer allocable to the Premises.

The language in the lease with respect to the chargeable water rate matches §22(g). It also includes the following clause:

> Tenant acknowledges that Landlord cannot guarantee the level of charges for water and sewer utility service, which will vary over time depending on Tenant usage characteristics, changes in the rates impose by the utility provider that provides services to Landlord and other factors.

The Court disagrees with plaintiff's contention that tenants are prohibited by statute from consenting to the payment of the HYD/SPR Fee. This is not a cross-metering case, and the tenant is not being asked to pay for her landlord's electricity or common area electricity or gas. See e.g. Santos v. Abdelaal, No. 04-02340, at *2 (Mass. Hous. Ct. Feb. 23, 2005); Kauffman v. Sherman, No. 24-SP-2549, at *1 (Mass. Hous. Ct. Nov 18, 2024).

Moreover, plaintiff cites no law or regulation that prohibits landlords from requiring informed tenants from paying a water safety infrastructure fee. See Layes v. RHP Props.,

Inc., 95 Mass. App. Ct. 804, 811-12 (2019) (Attorney General regulation required park operator to pay for oil tank repairs and prohibited the transfer of such payment to tenants). In this case, plaintiff knowingly consented to pay the HYD/SPR Fee when she signed the Water/Sewage Addendum.

## III. Order

For the foregoing reasons, defendants' Motion for Summary Judgment (Docket No. 56) is **ALLOWED**, and plaintiff's Motion for Class Certification (Docket No. 48) is **DENIED** as moot.

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: September 29, 2026